IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BEN C. LIPSCOMB                                                                                    PLAINTIFF

V.                                           CASE NO. 5:14-CV-5338

C. GREG HINES, et al.                                                                          DEFENDANTS

### MEMORANDUM ORDER AND OPINION

Currently before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 5) and Defendants' Response in opposition (Doc. 15). The Court held a hearing on the Motion on January 20, 2015, and after receiving evidence and hearing oral argument **DENIED** Plaintiff's Motion from the bench. This Opinion and Order explains the basis for the Court's decision. To the extent anything in this Order differs from what the Court stated from the bench, this Order will control.

### I. BACKGROUND

Plaintiff Ben Lipscomb is the elected City Attorney for the city of Rogers, Arkansas. On November 5, 2014, Plaintiff filed a Complaint (Doc. 1) in this Court against Defendants C. Greg Hines (the Mayor of Rogers) and Mark Kruger, Bob Goodwin, Clay Kendall, Andrew Hatfield, Gary Townzen, Buddy Wright, Marge Wolfe, and Betsy Reithemeyer (members of the Rogers City Council). Plaintiff alleges that on September 23, 2014, the Rogers City Council passed an ordinance stripping him of certain duties that were previously within his purview as City Attorney, creating a new unelected position of City Staff Attorney ("CSA"), and transferring Plaintiff's former duties to the CSA's office. Plaintiff's Complaint sets out one cause of action: that this city ordinance is a bill of

attainder in violation of Article I, Section 10 of the United States Constitution. Plaintiff seeks declaratory and injunctive relief declaring the ordinance unconstitutional and prohibiting its enforcement, as well as costs and attorney's fees.[1] Defendants filed their Answer (Doc. 16) to the Complaint on November 26, 2014.[2]

On the same day that he filed his Complaint, Plaintiff also filed a Motion for Preliminary Injunction (Doc. 5), seeking essentially the same declaratory and injunctive relief that was requested in his Complaint. Defendants filed their Response in opposition (Doc. 15) on November 19, 2014.

## II. LEGAL STANDARD

This Court must consider four factors when determining whether to issue a preliminary injunction: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). No single factor is determinative. *Id.*

---

[1] The Complaint also includes a jury demand. (Doc. 1, ¶ 17). However, Plaintiff's counsel withdrew the jury demand in open court and on the record at the January 20 hearing.
[2] The Answer denies that this Court has subject matter jurisdiction. *See* Doc. 16, ¶ 6. However, at the January 20 hearing, Defendants' counsel conceded that this Court has subject matter jurisdiction of the constitutional issues that have been raised.

2

## III. DISCUSSION

With regard to the first *Dataphase* factor—the threat of irreparable harm to the movant—there are facts favorable to both sides. On the one hand, Plaintiff's workload has decreased while his salary has remained unchanged. Many employees finding themselves in that situation would doubtlessly view it as a positive development. But on the other hand, Plaintiff was elected by the citizens of Rogers to do a particular job. The Court finds that there is a threat of irreparable harm to Plaintiff in the sense that he is no longer able to perform some of the duties that, at the time of his election, he and the voters who elected him expected he would perform.

The second *Dataphase* factor—the balance between irreparable harm and the injury the injunction would inflict—is a very close call. Plaintiff and Hines both testified that significant conflict had developed between Plaintiff and one of his subordinate staff attorneys, who had previously been a friend of Plaintiff's for many years, and that one of the reasons for the ordinance's enactment was to remove that subordinate from Plaintiff's supervision so that Plaintiff would not have to fire him. Hines also testified that prior to the ordinance's enactment, the level of dysfunction in the City Attorney's office "was getting out of control" and that the ordinance was a way of mitigating that dysfunction. The Court must therefore balance the irreparable harm of the citizens not being fully represented by their elected city official against the resurrection of enormous dysfunction that would be caused by restoring Plaintiff to his full duties.

Here, the fourth *Dataphase* factor—the public interest—simply mirrors the second *Dataphase* factor, because Plaintiff and Defendants are all public officials whose positions in this case track clashing public interests; *i.e.*, the public's interest in being fully

represented by its elected officials, and in having a fully functional city government. The closeness of these three *Dataphase* factors lends even greater importance to the remaining one—the likelihood that Plaintiff will succeed on the merits.

The United States Constitution requires that "[n]o state shall . . . pass any bill of attainder." U.S. CONST. art. I, § 10. A bill of attainder is a legislative act, in any form, that applies either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. *United States v. Lovett*, 328 U.S. 303, 315 (1946).

In *Crain v. City of Mountain Home*, the Eighth Circuit acknowledged that "[t]he imposition on an easily identifiable individual or class of a sanction of mandatory forfeiture of job or office has long been considered punishment under the bill of attainder clause." 611 F.2d 726, 728 (8th Cir. 1979). In that case, the Mountain Home City Council had appointed Crain in January of 1978 to fill the unexpired term of the previous city attorney. *Id.* at 727. In September of 1978, Crain declared his candidacy for the position in the upcoming election, to be held on November 7, 1978. *See id.* On the eve of the election, "the council sought but was refused Crain's voluntary resignation." *Id.* That same night, after being rebuffed by Crain "and fully cognizant that Crain was the sole candidate for City Attorney on the next day's general election ballot," the Council enacted two ordinances that reduced the City Attorney's salary to $1.00 per year, prohibited the City Attorney from engaging in the private practice of law, and specifically removed Crain from office for the remainder of the term he was currently filling. *See id.* at 727 – 28. Two days later, "the council resolved to hire an attorney at $40 per hour to fill that position for the remainder of Crain's initial term of office." *Id.* at 729.

Being unopposed, Crain won the election. *Id.* at 728. He assumed office on January 1, 1979, and one month later he filed a lawsuit in federal court, arguing that the ordinances were unconstitutional bills of attainder. *Id.* Ultimately, the Eighth Circuit agreed with Crain. The ordinance specifically stripping him of his appointed position was held to be a bill of attainder because it "clearly name[d] an individual in such a way as to inflict punishment on him without a judicial trial, by requiring Crain to forfeit his job." *Id.* at 729 (internal quotation marks, alteration, and citation omitted). The ordinance reducing the position's salary and prohibiting its occupant from private practice was also held to be a bill of attainder because while it was "facially constitutional, factually [it] constitute[d] improper action taken by the council in an effort to make Crain forfeit his position since, as a practical matter, *its intent was to punish him* if he accepted the rights and obligations of his elective position." *Id.* (emphasis added). The Eighth Circuit's analysis of the latter ordinance—which, unlike the other ordinance, did not specifically name Crain—was very fact-intensive and context-specific, with the goal of determining whether the *purpose* of the ordinance was punitive in nature.

There are several important distinctions between the instant case and *Crain*. For example, Plaintiff has not suffered any reduction in his salary. The distinction that is ultimately fatal to his Motion, though, is that every single witness at the hearing—including Plaintiff—testified that Plaintiff advocated the ordinance's enactment to council members on the night of its passage. There simply is no evidence in the record from which the Court could infer that any council member intended for the ordinance to be any sort of punishment for Plaintiff. Without the intent to punish, a legislative act cannot be a bill of

attainder. See id.; cf. Nixon v. Administrator of General Services, 433 U.S. 425, 469-70 (1977).

Plaintiff testified that he proposed the ordinance to Hines, and then advocated for its passage to several council members, because he felt that his job security was under attack by his aforementioned subordinate and by Hines. However, there is no evidence in the record that Plaintiff shared this fear or any other misgivings about the ordinance with any council members before it was passed. Plaintiff also testified as to other harms he suffered during the months following the ordinance's passage, including the transfer of one of his staff attorneys to the new CSA office, a reduction in the budget for his office, and the loss of more of his duties than were contemplated by the ordinance. However, many of these harms were not the result of legislative acts, and more importantly, none of them are the legislative act alleged to be a bill of attainder in Plaintiff's Complaint or Motion. As the pleadings are presently constituted, the Court finds that Plaintiff does not have a sufficiently high probability of succeeding on the merits to warrant entry of a preliminary injunction.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 5) is **DENIED**.

**IT IS SO ORDERED** on this 23rd day of January, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE